UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| ELIZABETH N. IOOR, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CAUSE NO. 1:25-cv-00142-ALT** |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, *sued as Frank Bisignano,*[1] | ) | |
| *Commissioner of the Social Security* | ) | |
| *Administration,* | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Plaintiff Elizabeth N. Ioor appeals to the district court from a final decision of the

Commissioner of Social Security ("Commissioner") denying her application under the Social

Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security

Income ("SSI"). (ECF 1). Because Ioor's sole argument on appeal is unpersuasive, the

Commissioner's decision will be affirmed.

## I. FACTUAL AND PROCEDURAL HISTORY

Ioor applied for DIB and SSI in September 2022, alleging disability as of July 1, 2022.

(ECF 10 Administrative Record ("AR") 22, 237-50).[2] Ioor's claim was denied initially and upon

reconsideration. (AR 22, 81-82, 100-01). On January 31, 2024, administrative law judge ("ALJ")

Meredith Jacques conducted an administrative hearing, at which Ioor, who was represented by

counsel, and a vocational expert ("VE") testified. (AR 44-80). On March 20, 2024, the ALJ

---

[1] Frank Bisignano became the Commissioner of Social Security in May 2025, and thus, pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted for his predecessor as the defendant in this suit. *See La'Toya R. v. Bisignano*, No. 1:24-cv-01564-JMS-TAB, 2025 WL 1413807, at *n.2 (S.D. Ind. May 15, 2025).

[2] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

rendered an unfavorable decision to Ioor, concluding that she was not disabled because she could perform her past relevant work, as well as a significant number of light-exertional jobs in the national economy, despite the limitations caused by her impairments. (AR 22-37). The Appeals Council denied Ioor's request for review (AR 6-9), and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

On March 26, 2025, Ioor filed a complaint in this Court appealing the Commissioner's final decision. (ECF 1). Ioor advances just one argument in this appeal: that the ALJ failed to adequately account for her migraine headaches in the residual functional capacity (RFC) assessment. (ECF 19 at 9-14).

On the date of the Commissioner's final decision, Ioor was thirty-eight years old (AR 237), had a high school education (AR 268), and had past relevant work experience as a customer food representative, hand pinner, and molding machine operator (AR 35; *see also* AR 269). In her application, Ioor alleged that she is disabled due to the following conditions: asthma, restrictive lung disease, seizures, migraines, kidney stones, depression, anxiety, and suicidal ideations. (AR 267).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d

863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (collecting cases). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## III. ANALYSIS

### *A. The Law*

Under the Act, a claimant seeking DIB or SSI must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also id.* §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring the ALJ to consider sequentially whether:

> (1) the claimant is presently employed [in substantial gainful activity]; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's [RFC] leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Pufahl v. Bisignano*, 142 F.4th 446, 452-53 (7th Cir. 2025) (citation omitted); *see also Sevec v. Kijakazi*, 59 F.4th 293, 298 (7th Cir. 2023); 20 C.F.R. §§ 404.1520, 416.920. "Between the third and fourth steps, the ALJ determines the claimant's [RFC], which is the claimant' maximum work capability." *Pufahl*, 142 F.4th at 453 (citations omitted); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). "The burden of proof is on the claimant for the first four steps." *Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023) (citation omitted). "At step five, the burden shifts to the [Commissioner] to show that there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations." *Id.* (citation and internal quotation marks omitted). "If at any step a finding of disability or nondisability can be made, the Social Security Administration will not review the claim further." *Sevec*, 59 F.4th at 298 (citation and brackets omitted).

*B. The Commissioner's Final Decision*

In the Commissioner's final decision, the ALJ found as a threshold matter that Ioor was insured for DIB through December 31, 2024. (AR 25). At step one of the five-step sequential analysis, the ALJ determined that Ioor had not engaged in substantial gainful activity after her alleged onset date of July 1, 2022. (*Id.*). At step two, the ALJ found that Ioor had the following severe impairments: diabetes, migraine headaches, depression, anxiety, obesity, obstructive sleep apnea, asthma, and left knee disorder. (*Id.*). At step three, the ALJ concluded that Ioor did not have an impairment or combination of impairments severe enough to meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 26). The ALJ assigned Ioor the following RFC:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can frequently balance . . . ; frequently stoop, kneel, crouch, and crawl. Must avoid concentrated exposure to extreme cold, extreme heat, humidity, and to dust, odors, fumes, and pulmonary irritants . . . , can understand, remember, and carry out detailed, but not complex tasks and

instructions, and can  have frequent interactions with coworkers, supervisors, and the public.

(AR 29).

The ALJ determined at step four that given the foregoing RFC, Ioor was capable of performing her past relevant work as a customer service representative and hand pinner, as both actually and generally performed. (AR 35). Additionally, the ALJ found that a hypothetical individual of Ioor's age, education, experience, and RFC could perform a significant number of other light-exertional jobs in the national economy, including checker, routing clerk, and sorter. (AR 35-36). Accordingly, Ioor's applications for DIB and SSI were denied. (*Id.*).

*C. Ioor's Migraine Headaches and the RFC*

Ioor's sole argument on appeal is that the ALJ failed to account for the frequency of her migraine headaches when assigning the RFC. (ECF 19 at 9). Ioor contends that "the ALJ should have at least included in the RFC determination the likelihood of missing work." (*Id.* at 11 (quoting *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014))).

1. Applicable Law

"An ALJ need not address every piece of evidence or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted). Rather, an ALJ is "subject to only the most minimal of articulation requirements." *Id.* All that is required is that the ALJ "provide an explanation for how the evidence leads to their conclusions that is sufficient to allow . . . a reviewing court[] to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Id.* (citations and internal quotation marks omitted). In shorthand terms, an ALJ "needs to provide a logical bridge from the evidence to [her] conclusion." *Id.* (citation and internal quotation marks omitted). Having said that, "[t]he

ALJ must evaluate the record fairly. Thus, although the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (citations omitted); *see also John B. v. Saul*, No. 2:18-cv-00223-JVB-JEM, 2019 WL 4233744, at *2 (N.D. Ind. Sept. 5, 2019).

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (bold emphasis omitted). The RFC assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence. *See* SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. §§ 404, 1454(a)(3), 416.945(a)(3). When determining the RFC, the ALJ must consider all medically determinable impairments, mental and physical, even those that are non-severe. *See* 20 C.F.R. §§ 404. 1454(a)(2), 416.945(a)(2); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008).

2. <u>Summary of Medical Evidence Pertaining to Ioor's Migraine Headaches</u>

From late 2020 through 2023, Ioor's medical records reflect diagnoses of "chronic daily headache" and "migraine with aura and without status migrainosus, not intractable" (*see* AR 417, 440, 445, 453, 3153, 3475, 4673); "migraine syndrome" (AR 3931); and "chronic tension-type headache, intractable" (AR 470, 514).

In October 2020, Ioor provided a "headache diary" to her provider, logging headaches on eleven of sixteen days preceding the appointment. (AR 1252). In December 2020, Ioor saw a

nurse practitioner for a one-year history of headaches, rating her worst headache pain as a "9" on a ten-point scale. (AR 499). The headaches occurred intermittently, with no precipitating factors, and lasted several hours, but her headaches had been improving since taking amitriptyline. (*Id.*). MRI imaging of the brain was normal. (AR 504).

In June 2021, Ioor reported that she had been taking Elavil for her headaches and that she had experienced only one to two headaches in the past month. (AR 473).

In February 2022, Ioor went to the emergency room for a headache that had started the night before. (AR 2990). She was photophobic, light-headed, and had nausea and vomiting. (*Id.*). She had discontinued her amitriptyline a month earlier due to chronic fatigue. (*Id.*). She was treated with saline hydration and medications and discharged. (*Id.*). She was given a handout on home headache prevention, which included resting in a darkened room. (AR 2943, 3017). In March 2022, Ioor's nurse practitioner noted Ioor's report that her headaches were a "chronic problem" that occurred "intermittently" and were gradually worsening. (AR 2853).

In March 2022, Ioor presented to the emergency room with a one-week history of headache, cough, congestion, body aches, and chest pain. (AR 2895). She was given fluids and a "migraine cocktail" with only some improvement in her headache. (AR 2900). The provider attributed Ioor's symptoms to a viral illness. (AR 2900).

In April 2022, Ioor presented to her nurse practitioner with a migraine, reporting that "[s]ome headache [is] always there, and the pain level varies." (AR 2791). She was taking Imitrex "twice a week if needed." (*Id.*). She was positive for a headache, but negative for dizziness, light-headedness, or visual disturbance. (*Id.*).

In October 2022, Ioor told her provider that her headaches were "sometimes there, sometimes not at all" and that they "come less often than they used to" and were shorter in

duration. (AR 3155). She had not used Imitrex for a month since her headaches were less severe and was taking ibuprofen for her "other headaches[.]" (*Id.*).

At a disability physical in February 2023, Ioor reported that she had two to three migraines a month. (AR 3927). In April 2023, Ioor told her provider that her headaches were "sometimes there, sometimes not at all." (AR 4286).

In October 2023, Ioor presented to the emergency room with a two-day history of headache, cough, congestion, and shortness of breath. (AR 4732). She was assessed with a viral illness and given fluids, steroids, and breathing treatments. (*Id.*).

3. Ioor's Subjective Report and Testimony About Migraine Headaches

In her disability application documents, Ioor reported that she "always had headaches" but only started treating them in February 2022. (AR 277). She wrote that stress, light, sound, and some smells can cause her migraine headaches, which result in pain and nausea and last three hours to "a couple of days." (AR 277-78). She began taking medication for her migraine headaches in August 2022—one medication daily and another at the onset of a migraine. (AR 278). When experiencing a migraine, Ioor covers her head or rests in a darkened room. (*Id.*). She indicated that her migraine headaches "started out daily" but then reduced to "a couple times a week." (AR 277).

At the administrative hearing on January 31, 2024, Ioor testified that she had migraines "[e]very day" (AR 57) and the "constant migraines . . . put [her] down." (AR 56). The migraines have no known trigger and last "[s]everal hours." (AR 57). She had been experiencing migraines for "a year or so." (*Id.*). Her family physician was treating her migraines by prescribing Topamax and Imitrex, but she claimed that treatment was not really helping. (AR 57, 71). She stated that Imitrex, which she takes at the first sign of a headache, makes her tired and sometimes nauseous. (AR 71).

8

4. <u>The Vocational Expert's Testimony</u>.

At the hearing, the vocational expert testified that to maintain competitive employment, an individual should not be absent more than two days per month and not be off-task more than fifteen percent of the workday. (AR 77, 79). No unscheduled breaks would be permitted outside of a ten-to-fifteen minute break in the morning and afternoon, and a thirty-to-sixty minute break during the middle of the workday. (AR 78).

5. <u>The ALJ's Decision Pertaining to Ioor's Migraine Headaches</u>

The ALJ discussed Ioor's headaches at various steps in her decision. After determining that Ioor's migraine headaches were a severe impairment at step two, the ALJ found they did not meet or equal a listed impairment at step three, stating: "The claimant reported headaches occurred intermittently with no known triggers. (1F/131). This is consistent with the medical record noting the claimant's headaches were improving with medications. While she testified she has headaches daily, this is inconsistent with her reports to doctors. (1F/105)." (AR 27-28).

The ALJ next considered Ioor's testimony about her headaches, summarizing: "[Ioor] stated she gets migraine medications from her family medical doctor[,] [a]lthough she alleged that they do not help with her migraines. She stated she has migraines daily that last several hours, but denied any triggers. She stated she has had migraines for a year or so." (AR 30; *see* AR 57, 71). The ALJ also considered Ioor's report at a February 2013 disability physical that Ioor had two to three migraines a month, noting that "she alleged she had them daily in hearing." (AR 31 (*comparing* AR 57, *with* AR 3927)).

The ALJ then penned an entire paragraph on Ioor' s migraine headaches when considering the medical evidence and RFC, stating:

> As for the claimant's complaints of headaches[,] [t]he record notes that she told her doctor that she sometimes had headaches and sometimes no headaches. (18F/275). In December of 2020 the claimant stated she can experience headaches

intermittently for several hours. She stated they had been improving since starting amitriptyline. She had no precipitating factors, and they were not proceeded by an aura. (1F/131). Imaging of the brain by MRI was normal in December of 2020. (1F/136). In June of 2021 the claimant was presenting to discuss Elavil for headaches. (1F/105). She stated she was taking this and had only gotten 1-2 headaches in the past month, inconsistent with her testimony regarding the frequency. (Compare hearing testimony to 1F/105). In October of 2022 she stated that headaches were shorter and come less often th[a]n they used to. (1F/60). But in October of 2023 she presented to the emergency room for migraine, nausea, vomiting, shortness of breath, and cough and congestion for two days. (19F/200). . . . Her doctor advised that she likely had a viral illness causing flare in asthma and migraine. She was started on cough medication. (Id.).

(AR 33).

When assigning the RFC, the ALJ primarily relied on the opinions of Joshua Eskonen, D.O., and J.V. Corcoran, M.D., the state agency physicians who reviewed Ioor's record in March and July 2023, respectively, and concluded that Ioor could perform "light work except could occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; frequently balance, stoop, kneel, crouch, and crawl; avoid concentrated exposure to extreme cold and hot, humidity, fumes, odors, dust, gases, and poor ventilation, and hazards. (3A/6; 7A/8)." (AR 34; *see* AR 87-89, 108-09). The ALJ explained that these "[e]nvironmental limitations were consistent with [Ioor's] asthma condition and migraines." (AR 34). The ALJ found the other medical opinions of record unpersuasive. (AR 33-34).

### 6. Analysis

Ioor contends that that ALJ failed to account for how her "severe, intermittent headaches" would impact her work attendance and her ability to stay on task. (ECF 19 at 11). She argues that the ALJ's decision "did not reflect any likelihood of absences or breaks at work related to migraines, and that is simply unsupported by the record." (*Id.* (quoting *Moore*, 743 F.3d at 1127)).

As summarized above, the ALJ discussed Ioor's history of migraine headaches at length

in the decision. Ultimately, the ALJ found Ioor's symptom testimony of experiencing migraine headaches "every day" wholly inconsistent with her reports to providers about the frequency of her migraines during the relevant time period. (*See* AR 28, 31). Ioor argues that her testimony is "not inconsistent but misunderstood[,]" clarifying that she "experiences headaches on nearly a daily basis but only has severe migraines a few times per month." (ECF 19 at 12). As such, Ioor contends the ALJ  failed to account in the RFC for her "intermittent" migraine headaches. (*See id.* at 9-11).

Ioor's argument in her opening brief is defied by her testimony at the hearing, where she testified that she "has[s] constant migraines that put [her] down." (AR 56). When the ALJ specifically asked how frequently her migraines were occurring, Ioor responded "[e]very day." (AR 57; *see also* AR 71 (denying that she experienced two different types of headaches)). Now, Ioor faults the ALJ for failing to look beyond Ioor's exaggerated symptom testimony to discern the actual frequency of her migraine headaches in the record, and then account for them in the RFC. (ECF 19 at 9-13); s*ee Elisha R.P. v. Comm'r of Soc. Sec.*, No. 22-cv-01882, 2023 WL 4962114, at * (S.D. Ill. Aug. 3, 2023) ("[T]he ALJ usually should include the likelihood of missing work when determining the RFC of a claimant who suffers from migraines." (citation omitted)).

In making this argument, Ioor relies on *Moore*, where the ALJ seemingly agreed that the claimant's migraines occurred once or twice weekly but denied her disability claim, resulting in "the [incorrect] implication that incapacitation once or twice  a week would not be problematic because a significant amount of time remains in which the claimant could work." 743 F.3d at 1126. Ioor also cites *Lori R. v. Kijakazi*, where the court remanded the ALJ's decision for failure to properly consider the claimant's migraine history, stating: "[I]f the ALJ agrees that Lori R. experiences incapacitating migraines more than once a month, she cannot perform her past

relevant work based on the testimony of the [vocational expert] during the hearing." No. 1:22-cv-02034-MJS-MJD, 2023 WL 4144597, at *6 (S.D. Ind. June 23, 2023). "If the ALJ believes that Lori R.'s migraines would not cause her to miss work, he must explain how he reached this conclusion." *Id*.

Much of the medical evidence that Ioor cites in her brief to support her claim of intermittent migraine headaches predates her alleged onset date or misstates the record. And to clarify, the ALJ did *not* find that Ioor's headaches occurred intermittently as Ioor claims. (*See* ECF 19 at 9-10). Rather, the ALJ merely summarized Ioor's report to a nurse practitioner in December 2020—a year and nine months before her alleged date of onset of September 30, 2022—that Ioor was experiencing headaches intermittently. (AR 28 (citing AR 499)). Ioor also cites an emergency room visit for a migraine in February 2022, again prior to her date of onset, near in time to when she was given a handout on home headache treatment that included lying in a darkened room. (ECF 19 at 10 (citing AR 2942, 2990, 3017)). Additionally, Ioor cites a "headache journal" from October 2020, again two years before her alleged onset date, where she documented eleven headaches in sixteen days. (*Id.* at 12 (citing AR 1252)).

The medical evidence of Ioor's migraine headaches after her alleged onset in September 2022, however, is sparse. As the ALJ correctly noted, once Ioor started on migraine medications, her migraine headaches improved. (AR 28). Specifically, medical records in December 2020 reflect that Ioor's headaches began to improve after starting on amitriptyline (Elavil) for migraine prevention. (AR 499). In fact, by June 2021, Ioor's migraine headaches had reduced to just once or twice a month when on Elavil. (AR 473). Similarly, in October 2022, one month after her alleged onset date, Ioor told her provider that her headaches "come less often than they

used to" and were shorter and less severe in nature, and she had not used Imitrex[3] in a month. (AR 428). The ALJ did consider that Ioor told the nurse practitioner at her February 2023 disability physical that she had "2-3 migraine days per month." (AR 31; *see* AR 3927). However, the ALJ ultimately found the limitations in the disability physical "unpersuasive" due to a lack of supportive explanations and findings, and because the limitations appeared to be based on Ioor's subjective statements. (AR 34-35; *see also* AR 87, 96).

Ioor faults the ALJ for failing to discuss that she went to the emergency room for a migraine headache in February 2022. (ECF 30 at 5 (citing AR 2990)). She claims this is an "the most important piece of evidence about the effects of [her] headaches . . . with no intervening conditions present." (*Id.*). Not so. The emergency room record reflects that Ioor had discontinued taking amitriptyline prophylactically a month earlier, citing complaints of fatigue. (AR 2990; *see also* AR 2853). At that visit, Ioor improved within ninety minutes of receiving hydration and medications and was then discharged at her request. (AR 2994). Simply stated, one visit to the emergency room prior to her alleged onset date after Ioor had stopped taking her migraine prevention medication does not rise to the level of a separate line of evidence contrary to the ALJ's decision. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001) ("[A]n ALJ may not ignore an entire line of evidence that is contrary to her findings . . . ." (citation omitted)).

Ioor further argues that the ALJ's inclusion of environmental limitations in the RFC does not reasonably account for her migraine headaches. (ECF 30 at 3-4). In making this argument, Ioor notes that the state agency physicians cited her asthma and history of seizures, not her migraine headaches, when assigning environmental limitations. (ECF 30 at 3; *see* AR 88, 97). But in making this point, Ioor conveniently ignores her own statement in the headache

---

[3] Imitrex is a prescription medication used for the acute treatment of migraine headaches. *See, e.g.*, *McGhee v. Astrue*, No. 3:09CV493, 2010 WL 1945801, at 8, *n.11 (E.D. Va. Mar. 31, 2010) (citation omitted).

questionnaire submitted with her disability application that stress, lights, some sound, and smells cause her headaches. (AR 277). In any event, "[a]n ALJ is not required to rely solely on medical opinions to determine the RFC." *Gandy v. Berryhill*, No. 2:17-cv-303, 2019 WL 1123509, at *4 (N.D. Ind. Mar. 12, 2019) (citations omitted). The determination of a claimant's RFC "is an issued reserved to the [Commissioner]." *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995) (citations omitted).

In sum, the ALJ duly considered Ioor's testimony that she experiences "constant migraines that put [her] down" "[e]very day[.]" (AR 56-57). The ALJ then contrasted this testimony with the medical evidence during the relevant period reflecting that Ioor's migraine headaches had reduced in frequency and intensity to once or twice a month when taking migraine medications (AR 28; *see* AR 33), which on this record is not inconsistent with an ability to maintain competitive employment (*see* AR 79). The ALJ assigned an RFC that includes environmental limitations to avoid triggering Ioor's migraine headaches in the workplace. The ALJ's reasoning in doing so is sufficiently traceable and supported by substantial evidence. *See Outlaw v. Astrue*, 412 F. App'x 894, 898 (7th Cir. 2011) ("The ALJ needed only to include limitations in [the] RFC determination that were supported by the medical evidence and that the ALJ found to be credible." (citations omitted)).

It is Ioor who "bears the burden of supplying adequate records and evidence to prove [her] claim of disability" *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (citations omitted), and she has failed to do so here. *See McCorkle v. Kijakazi*, No. 22-1638, 2023 WL 179983, at *4 (7th Cir. Jan. 13, 2023) ("The burden falls on McCorkle to provide evidence that migraines cause specific limitations affecting her capacity to work . . . . The only evidence that supports McCorkle's position about the needed work restrictions came from her testimony and Dr. Frazier's opinion, and the ALJ gave sufficient reasons for discounting that evidence."

14

(citation omitted)); *Holloway v. O'Malley*, No. 3:23-CV-475-CCB, 2024 WL 1364790, at *5 (N.D. Ind. Apr. 1, 2024) (rejecting the claimant's argument that her migraines necessitated an off-task limitation in the RFC); *Mychael W. v. Kijakazi*, No. 3:22cv675, 2023 WL 5498856, at *5 (N.D. Ind. Aug. 25, 2023) ("[N]one of Plaintiff's treatment providers limited his work capacity due to headaches . . . , nor has Plaintiff shown an objective basis for finding he would be absent from work or off task for any specific amount of time during the workday due to headaches . . . ."). Consequently, the Commissioner's final decision will be affirmed. *See generally Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985) ("If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough.").

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Ioor.

SO ORDERED.

Entered this 6th day of March 2026.

/s/ Andrew L. Teel
Andrew L. Teel
United States Magistrate Judge

15